Filed 4/3/23  In re Be.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Be.B. et al., Persons Coming Under the Juvenile Court Law. | |
| | D081284 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. SJ12992A-C) |
| Plaintiff and Respondent, | |
| v. | |
| B.B., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Conditionally reversed and remanded with directions.

Anna Rak, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa Maldonado, Chief Deputy County Counsel, and Georgia Braun, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

B.B. (Father) appeals from orders terminating parental rights to his children, Be.B., V.B., and Br.B. (the children), at the Welfare and Institutions Code section 366.26[1] hearing.[2] His sole contention on appeal is that the San Diego County Health and Human Services Agency (Agency) did not comply with its inquiry duties under the federal Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). The Agency concedes it did not fully comply with aspects of its inquiry duties, and therefore agrees that a limited remand is appropriate. The parties filed a joint stipulation to immediate issuance of the remittitur. We accept the Agency's concession as to its duties of inquiry and the parties' joint stipulation, conditionally reverse the order terminating Father's parental rights, and remand for the limited purpose of compliance with ICWA and its related statutory provisions.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In February 2021, the Agency petitioned the juvenile court under section 300, subdivision (b)(1), alleging the children were at substantial risk of serious physical harm or illness because the parents did not provide them with suitable shelter. Specifically, the petitions alleged there were illegal substances accessible to the children in the family home, and that the parents allowed known drug users and gang members to be in and around

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal and is discussed only when relevant.

[3] Because Father's sole contention on appeal relates to ICWA, we limit our discussion of the factual and procedural history to those facts relevant to his claim.

2

the home.  The Agency also submitted an affidavit asking the court to issue a protective custody warrant.  The juvenile court issued the protective custody warrant pursuant to section 340, subdivision (a), and the children were placed in out-of-home care at the detention hearing.

The Agency filed several reports during the pendency of the case that discussed its investigation of the children's potential Native American ancestry.  The Agency reported that Mother "denied ICWA," and that it was initially unsuccessful in contacting Father to inquire about ICWA.  Father later spoke with the Agency and denied any Native American ancestry.  The Agency noted that in a prior dependency case, the juvenile court found that ICWA did not apply to Be.B. and V.B.

The Agency also documented its interviews with paternal relatives relating to the ICWA investigation.  Paternal grandmother disclosed that her family is from Denmark and that she has no relatives who were enrolled in a tribe or lived on a reservation.  To her knowledge, paternal grandfather's family members were not enrolled members of a tribe and also never lived on a reservation.  Paternal uncle believed his family had affiliation with the Blackfeet tribe and stated that paternal great-aunt may have further information.  Paternal great-aunt denied any Native American ancestry but believed a family member may have received a scholarship to college based on affiliation with a Native American tribe.  She was unable to confirm this information but she believed the relative's father, L.B., could substantiate her claim.  The record does not reflect that the Agency contacted L.B.

The juvenile court reviewed the Agency's reports and made several ICWA-related findings.  At the six-month review hearing, the court found that reasonable inquiry had been made to "determine whether the child[ren] [are] or may be . . . Indian child[ren]."  It further found that notice pursuant

3

to ICWA was not required because the court had no reason to know the children were "Indian child[ren]." At a pretrial status conference, the juvenile court inquired directly from Father if he was aware of any Native American ancestry, and Father responded "no." The juvenile court again found, without prejudice, that ICWA was not applicable to the proceeding.

At the section 366.26 hearing, counsel for the Agency informed the court that it had submitted an "informal inquiry" with the Blackfeet tribe via email and certified mail. Although the Agency received a confirmation receipt for the inquiry letter, it had not yet received any response from the tribe. The Agency asked the juvenile court to find that it had conducted an adequate inquiry and that ICWA did not apply. The court found that the Agency made a sufficient inquiry from the children's relatives, and based on the family's denials of Native American ancestry and the lack of response from the Blackfeet tribe, the court found, without prejudice, that ICWA did not apply. The court then terminated parental rights and ordered adoption as the children's permanent plan.

Father appeals the termination orders but only challenges the juvenile court's finding that ICWA does not apply.

## DISCUSSION

Father contends the Agency failed to comply with its duties of initial and further inquiry pursuant to ICWA and section 224.2. As to its duty of initial inquiry, Father asserts the Agency did not inquire of the paternal relatives in a timely manner, and further asserts the Agency failed to inquire of the children, the maternal aunt, and the maternal half-siblings, despite having their contact information. As to its duty of further inquiry, Father argues the Agency erroneously failed to contact the Bureau of Indian Affairs

4

(BIA), or extended paternal family members, when it received information from a relative suggesting potential affiliation with the Blackfeet tribe.

The Agency concedes that it did not adequately comply with its inquiry duties. "On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051 (*D.S.*).) We accept the Agency's concession as to its duties of inquiry, and under either standard of review, we conclude the juvenile court's ICWA findings were inadequately supported by the evidence.

Congress enacted ICWA in order to address the separation of "Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes. [Citation]." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Thereafter, our Legislature enacted provisions to effectuate ICWA's purposes, including section 224.2. (*Id.* at p. 9.) Section 224.2 imposes an "affirmative and continuing duty" upon the Agency and the juvenile court to inquire whether a child subject to juvenile dependency may be an Indian child. (§ 224.2, subd. (a).)

"This continuing duty [of inquiry] can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F. (*2020) 55 Cal.App.5th 558, 566.) In the first phase, the Agency's initial duty requires it to, at a minimum, inquire from the party reporting child abuse or neglect whether they have information that suggests "the child may be an Indian child." (§ 224.2, subd. (a).) In the second phase, "if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as

5

practicable.' " (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)  In the third stage, "if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."  (*Ibid*.)

Subdivision (b) of section 224.2 creates an expanded duty of initial inquiry that requires the Agency to ask extended family members whether the child may be an Indian child.[4]  We note, however, that the plain language of section 224.2, subdivision (b), suggests this expanded duty applies *only* when the child has been taken into temporary custody without a warrant pursuant to sections 306 or 307.  (§ 224.2, subd. (b) [expanded duty to inquire of extended family members is triggered "[i]f a child is placed into the temporary custody of a county welfare department pursuant to section 306 or a county probation department pursuant to Section 307 . . . ."]; see also *In re Adrian L.* (2022) 86 Cal.App.5th 342, 355–359 (conc. opn. of Kelley, J.) [concluding agency did not have an initial inquiry duty to inquire of extended family members under § 224.2, subd. (b) because child was not placed into agency's temporary custody pursuant to section 306 or 307].)

Here, the juvenile court issued a protective custody warrant under section 340, subdivision (a), and the children were not taken into temporary custody under sections 306 or 307.  We therefore question whether the Agency had the expansive duty of initial inquiry mandated by section 224.2, subdivision (b).  But we need not decide this issue because, as discussed below, we find independent grounds to conditionally reverse and remand

---

[4]    ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); Welf. &. Inst. Code, § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

based on the Agency's failure to fulfill its duties of further inquiry. We presume the Agency will fully comply with its inquiry duties on remand.

Pursuant to its duties of further inquiry, if the Agency has "reason to believe" a child involved in a dependency proceeding is an Indian child, it must conduct further inquiry by interviewing extended family members, and contacting tribes that may have information regarding the child's tribal membership, and the BIA. (§ 224.2, subd. (e)(2)(A)-(B).) There is "reason to believe" a child is an Indian child if the Agency has information "suggesting" the child, or the child's parents, are a member or may be eligible for membership in a Native American tribe. (§ 224.2, subd. (e)(1).) Courts have broadly construed the "reason to believe" standard to enforce the Agency's continuing statutory obligation to inquire whether a child may be an Indian child. (*In re S.R.* (2021) 64 Cal.App.5th 303, 317 ["[t]he recent amendment to section 224.2, subdivision (e) confirms the 'reason to believe' standard requiring further inquiry should be broadly interpreted."]; *In re T.G.* (2020) 58 Cal.App.5th 275, 295 [construing the duty to make further inquiry broadly is "essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' "].)

The Agency concedes its statutory duty of further inquiry required it to seek contact with a paternal relative, L.B., who may have had information regarding potential tribal affiliation. The Agency further concedes that it should have contacted the BIA and provided proof of this contact to the juvenile court. Broadly construing the "reason to believe" standard, we agree with the Agency's concessions. Paternal great-aunt represented to the Agency that a relative, L.B., may have information pertaining to familial tribal affiliation. The paternal aunt's attempt to contact L.B. was unsuccessful, and the record does not reflect that the Agency sought contact

7

with him. Further, since the Agency had information that the children may have Blackfeet Tribe ancestry, it had a duty to contact the BIA pursuant to section 224.2, subdivision (e)(2)(B).[5] Because the Agency failed to make these inquiries after receiving specific information alleging potential Native American ancestry, a conditional reversal and limited remand to ensure compliance with ICWA is appropriate. (See *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404 [grandmother's representation that she had Cherokee ancestry was "specific enough to trigger the duty of further inquiry."]; *D.S.*, *supra*, 46 Cal.App.5th at pp. 1046, 1052 [aunt's representation that she may have Sioux and Blackfeet ancestry was sufficiently specific to trigger a duty of further inquiry even though aunt had no further information or reason to believe the child was an Indian child.].)

Accordingly, we conclude the Agency did not adequately comply with its statutory duties of inquiry, and therefore the juvenile court's ICWA findings were not supported by the evidence. We therefore conditionally reverse the court's orders terminating Father's parental rights and remand the matter to the juvenile court so the Agency may comply with ICWA and section 224.2.

DISPOSITION

The juvenile court's November 18, 2022 orders terminating Father's parental rights are conditionally reversed and the matter is remanded to the juvenile court with directions that, within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the inquiry

---

[5] We further note that although the Agency provided an informal inquiry letter to the Blackfeet Tribe, the record is silent as to whether the letter included information "necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).) But because the Agency agrees to a limited remand to comply with its ICWA inquiries, we assume the Agency will fully comply with its inquiry duties under ICWA on remand.

provisions of section 224.2. Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency's investigation satisfied its duties of inquiry. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to know that the children are Indian children after completion of further inquiry, the juvenile court shall reinstate the November 18, 2022 orders terminating Father's parental rights. Alternatively, if after completing further inquiry the Agency or the juvenile court has reason to know that the child is an Indian child, the court shall proceed accordingly.

By stipulation of the parties, the clerk of this court is directed to issue the remittitur immediately. (Cal. Rules of Court, rule 8.272(c)(1).)


BUCHANAN, J.

WE CONCUR:



IRION, Acting P. J.



DO, J.

9